# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:21-cv-00265-MR

| | |
|---|---|
| **L.L., individually and on behalf of E.R., a minor,** ) ) ) **Plaintiffs,** ) ) vs. ) ) ) **MEDCOST BENEFIT SERVICES, MOUNTAIN AREA HEALTH EDUCATION CENTER MEDICAL AND DENTAL CARE PLAN,** ) ) ) ) ) ) **Defendants.** ) ) _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendant Medcost Benefit Services' Motion to Dismiss [Doc. 32].

## I. PROCEDURAL HISTORY

The Plaintiffs, L.L., individually and on behalf of her minor child, E.R., (collectively, "Plaintiffs") filed a Complaint on July 26, 2021, in the District of Utah against Defendants Medcost Benefit Services ("Medcost") and Mountain Area Health Education Center ("MAHEC") Medical and Dental Care Plan ("the Plan") (collectively, "Defendants"). [Doc. 2]. The Complaint sets forth two causes of action pursuant to the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.: the first for recovery of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and the second seeking equitable relief pursuant to 29 U.S.C. § 1132(a)(3) for a violation of the Mental Health Parity and Addiction Equity Act ("MHPAEA"), 29 U.S.C. § 1185a. [Id. at ¶¶ 46-73].

On October 5, 2021, the parties stipulated to a change of venue to the Western District of North Carolina [Doc. 10], and the case was transferred on October 6, 2021 [Doc. 12]. On November 1, 2021, Medcost filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] [Doc. 20]. On January 21, 2022, L.L. filed a motion for leave to file an amended complaint [Doc. 26], and the Court granted that motion on January 25, 2022 [Doc. 27]. On February 8, 2022, L.L. filed an Amended Complaint, asserting the same causes of action as the original Complaint. [Doc. 28]. On March 1, 2022, Medcost filed a Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6). [Doc. 32]. L.L. filed a Response in Opposition to Medcost's Motion to Dismiss on March 22, 2022 [Doc. 35], and Medcost filed a Reply to L.L.'s Response on April 5, 2022 [Doc. 36]. Thus, this matter has been fully briefed and is now ripe for review.

---

[1] The Plan did not join the Motion to Dismiss and has filed an Answer to the Amended Complaint. [Doc. 29].

2

## II. STANDARD OF REVIEW

The central issue for resolving a Rule 12(b)(6) motion is whether the claims state a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering the Defendant's motion, the Court accepts the allegations in the Complaint as true and construes them in the light most favorable to the Plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92. Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the

defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The Complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; see also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

## III. FACTUAL BACKGROUND

Construing the well-pled factual allegations of the Amended Complaint as true and drawing all reasonable inferences in the Plaintiff's favor, the following is a summary of the relevant facts.

The MAHEC Plan is a self-funded employee welfare benefits plan under ERISA. [Doc 28 at ¶ 7]. Medcost is an insurance company that serves as the third-party claims administrator for the MAHEC Plan. [Id. at ¶¶ 2-3].

4

As third-party claims administrator, Medcost has discretionary authority and responsibility to administer claims and to interpret eligibility for benefits. [Id. at ¶¶ 3-4]. L.L. and her daughter, E.R.,[2] are covered by the Plan. [Id. at ¶ 7]. At all times relevant to the present case, L.L. was a participant in the Plan and E.R. was a beneficiary of the Plan. [Id.]. The two continue to be a participant and beneficiary of the Plan, respectively. [Id.].

E.R. has significant behavioral problems and suffers from an attachment disorder. [Id. at ¶ 14]. She has engaged in a course of self-harm and has threatened suicide. [Id.]. As she has grown older, her behavioral problems have worsened and she has experienced continually intensifying fits of rage and has behaved violently toward her parents, including threatening them with knives. [Id. at ¶¶ 15-16]. L.L. has sought therapy and intervention for E.R., including taking her to psychiatrists who prescribed psychiatric medication. [Id. at ¶ 15]. However, these interventions proved ineffective. [Id. at ¶ 17]. After medication and outpatient therapy proved ineffective, E.R. was admitted to an inpatient wilderness program, Trails Carolina, where her behavior improved somewhat. [Id.]. After E.R.'s discharge from Trails Carolina, her primary therapist recommended

---

[2] Although E.R. was a minor at the time the action was filed, she has since reached the age of majority.

5

additional treatment, and she was admitted to Lakehouse Academy for Girls. [Id. at ¶ 18]. After her discharge from Lakehouse Academy for Girls, E.R. saw a therapist and psychiatrist but refused to participate in treatment, resulting in her therapy team stating they could no longer treat her. [Id. at ¶ 18]. E.R. continued to threaten suicide and committed self-harm by carving messages into her skin. [Id. at ¶ 19]. E.R. met with a crisis management team on multiple occasions to assess her need for hospitalization, and her treatment team ultimately recommended that she be admitted to Change Academy Lake of the Ozarks ("CALO"), a residential treatment facility that specializes in the treatment of individuals suffering from attachment disorders. [Id. at ¶¶ 8, 19]. E.R. was admitted to CALO on August 3, 2018. [Id. at ¶ 20].

L.L. sought to have the costs of E.R.'s treatment at CALO covered by the Plan, arguing that the terms of the Plan provide that "the Plan covers medically necessary mental health and/or substance abuse disorder treatment," including such treatment received at residential treatment facilities. [Id. at ¶¶ 21-22]. However, in a letter to CALO dated July 25, 2019, Medcost denied payment for E.R.'s treatment, citing an exclusion for residential treatment. [Id. at ¶ 23]. Specifically, Medcost's letter noted that the Plan does not cover residential treatment for mental health and

6

substance disorders for: foster homes or halfway houses; wilderness center training; therapeutic boarding schools; and custodial care, situation, or environmental change. [Id.]. Medcost did not send that letter to L.L.; however, L.L. was able to obtain a copy of the letter from CALO. [Id. at ¶ 25].

L.L. appealed the denial of benefits on January 9, 2020. [Id. at ¶ 24]. In her appeal, L.L. argued that she was entitled to certain review procedures pursuant to ERISA and called Medcost's attention to its failure to provide her with a copy of the denial letter. [Id. at ¶¶ 24-25]. L.L also engaged in email correspondence with Medcost about the denial. [See id. at ¶ 26]. In that correspondence, Medcost clarified that it had classified CALO as a "therapeutic boarding school" and noted that it was not its policy to draft a denial letter when the denial was based on a "facility type exclusion." [Id.]. The email correspondence revealed that CALO had disputed that classification and included documentation showing its status as a licensed residential treatment facility. [Id. at ¶ 27]. In her appeal, L.L. also referenced CALO's status as a licensed residential treatment facility and noted that this licensed status qualified it as a covered residential treatment facility under the terms of the Plan. [Id. at ¶¶ 29-30].

In a letter dated April 20, 2020, Medcost conceded that CALO met the criteria for a residential treatment center and "provides all of the care

7

expected of a residential facility." [Id. at ¶ 34]. Nevertheless, Medcost upheld the denial of benefits, stating in relevant part, as follows:

> Services were denied based on the exclusion in [Summary Plan Document]; under Residential Treatment for therapeutic boarding schools. No. It is not medically necessary for this member to be inpatient for this amount of time in a residential treatment facility. The available information does not support the medical necessity for the use of the RTC level of care. This is due to a lack of documentation of specific symptom severity that would require the use of 24 hour a day monitoring, observation and treatment. The patient has a chronic history of behavioral difficulties, mood dysregulation, and temper outbursts, but at the time of admission there was no evidence of severity related to thoughts or behaviors related self-harm, [sic] no severe aggression, and no severity of mood requiring 24 hour a day care. In addition, there is no evidence of acute deterioration of functioning that would require the intensive use of 24 hour a day resources for chronic management and care. Therefore, the use of the RTC level of care was excessive for the patient's documented presentation and was outside the standard of care.

[Id. at ¶ 33]. The letter also stated that L.L. had the right to appeal the denial and could request reasonable access to documents, records, and other information relevant to the appeal. [Id. at ¶ 35].

L.L. submitted her appeal on October 9, 2020. [Id. at ¶ 36]. In this appeal, L.L. argued that the CALO stay was medically necessary and included several letters from members of E.R.'s treatment team to support

8

this argument. [Id. at ¶¶ 38-39]. L.L. also expressed concern that Medcost was applying overly restrictive criteria to evaluate whether mental health treatment was medically necessary and that it would not apply such criteria to other types of medical treatment. [Id. at ¶¶ 41-46].

Medcost upheld the denial of benefits in a letter dated December 18, 2020. [Id. at 48]. This letter stated that L.L's appeal "was reviewed out of courtesy, but it did not meet the definition of an appeal." [Id.]. The only justification for denial included in this letter was that "appeals needed to be directed to the Plan or Claims administrator and needed to be sent within 180 days of the adverse benefit determination." [Id.]. At this point, having exhausted her appeals process with Medcost, L.L. filed this action for recovery of benefits and equitable relief pursuant to ERISA. [Id. at ¶ 49].

## IV. DISCUSSION

L.L.'s Amended Complaint asserts two causes of action pursuant to ERISA. [Doc. 28]. The first is for recovery of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), and the second is for equitable relief pursuant to 29 U.S.C. § 1132(a)(3) for equitable relief for a violation of the MHPAEA. [Id.].

### A. Recovery of Benefits

Title 29 of the United States Code, Section 1132(a)(1)(B) provides that a participant or beneficiary of an ERISA-governed plan may bring a civil

9

action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

The Fourth Circuit[3] has not addressed what a plaintiff must allege to sufficiently state a claim for recovery of benefits. Medcost, citing several out-of-circuit district courts, argues that, to state a plausible claim for relief, a plaintiff must identify in her complaint a specific Plan provision that provides coverage. [Doc. 23 at 9]. At least one circuit court has held similarly, stating that "[t]o plead a violation of [§ 1132(a)(1)(B)], a plaintiff must allege 'the existence of an ERISA plan,' and identify 'the provisions of the plan that entitle [them] to benefits.'" Doe v. CVS Pharmacy, Inc., 982 F.3d 1204, 1213 (9th Cir. 2020) (third alteration in original) (quoting Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc., 99 F. Supp. 3d 1110, 1155 (C.D. Cal. 2015)). L.L., on the other hand, argues that at the motion-to-dismiss stage all that is required is that she state enough facts to plausibly allege that the denied benefit was covered under an ERISA-governed plan. [Doc. 35 at 5].

---

[3] This case was originally filed in the District of Utah and was transferred here by the stipulation of the parties. The parties do not address whether the law of the original forum is applicable, but the Court's review of Fourth and Tenth Circuit precedent has not revealed any relevant distinctions.

The Court need not determine which legal standard applies here, because even applying Medcost's arguably higher standard, the Court concludes that L.L. has sufficiently stated a claim. L.L. alleges the existence of an ERISA-governed plan, [Doc. 28 at ¶ 7], and alleges that E.R. was a beneficiary of the plan, [id.]. She goes on to identify the provision of the Plan that she contends entitles E.R. to coverage: she specifically alleges that the Plan covers medically necessary treatment at residential facilities, other than the facilities that are explicitly excluded. [Id. at ¶¶ 23, 53]. L.L. alleged that the treatment at CALO was medically necessary, [id. at ¶ 38-39], and that CALO was not an excluded facility, [id. at ¶ 29]. Construing these well-pleaded allegations as true, L.L. has sufficiently stated a claim for recovery of benefits. Accordingly, the Court will deny Medcost's motion to dismiss as to this cause of action.

### B. Equitable Relief for Violation of MHPAEA

In addition to seeking benefits in accord with the terms of the Plan, L.L. seeks a variety of equitable remedies pursuant to 29 U.S.C. § 1132(a)(3). [Id. at ¶ 87]. Section 1332(a)(3) provides that a participant, beneficiary, or fiduciary can bring a civil action to obtain appropriate equitable relief to redress a violation of ERISA or to enforce a provision of ERISA or the terms of the ERISA-governed plan. 29 U.S.C. § 1332(a)(3). Here, L.L. alleges that

Medcost violated the MHPAEA, 29 U.S.C. § 1185a, which states that an ERISA-governed plan that provides both medical and surgical benefits and mental health or substance use disorder benefits cannot apply more restrictive treatment limitations to mental health or substance use disorder benefits than the "predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan" and provides that a plan cannot apply "separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii). Treatment limitations can be quantitative—for example, capping the number of provider visits per year—or nonquantitative—for example, approving only such treatments that are medically necessary. See Alan R. v. Bank of Am. Grp. Benefits Program, No. 3:20-cv-00441-RJC-DSC, 2022 WL 413935, at *10 (W.D.N.C. Feb. 9, 2022).

Plaintiffs alleging violations of the MHPAEA can bring a facial challenge—alleging that the express terms of the ERISA-governed plan discriminate against mental health or substance use disorder benefits—or an as-applied challenge—alleging that while the plan terms are neutral on their face, "the same nonquantitative treatment limitations are applied more stringently to mental health and substance use disorder benefits." See Alan R., 2022 WL 413935, at *11. Here, L.L. brings an as-applied challenge as

she alleges that Medcost's application of its nonquantitative treatment limitations was more stringent because E.R.'s claim was for mental health treatment.[4]

The Supreme Court has clarified that § 1132(a)(3) is a "safety net" provision. Varity Corp. v. Howe, 516 U.S. 489, 512 (1996). Accordingly, equitable relief pursuant to § 1132(a)(3) is "normally appropriate only for injuries that do not find adequate redress in ERISA's other provisions." Korotynska v. Metro. Life Ins. Co., 474 F.3d 101, 102 (4th Cir. 2006). In Korotynska, the Fourth Circuit held that when § 1132(a)(1)(B) affords a plaintiff adequate relief for her benefits claim a cause of action under § 1132(a)(3) is not appropriate. Id. at 107.

Medcost argues that L.L., like the plaintiff in Korotynska, seeks equitable relief for an injury that could be adequately redressed by her § 1132(a)(1)(B) recovery of benefits claim. [Doc. 33 at 22-23]. In response, L.L. argues that she seeks equitable relief "to ensure that E.R. receives the benefits she is entitled to in the future," which she argues is distinct from an attempt to recover benefits owed. [Doc. 35 at 22-23]. L.L. also argues that

---

[4] While the Amended Complaint does not specify whether L.L. is bringing a facial or as-applied challenge, her Response to Medcost's Motion to Dismiss clarifies that her challenge is as-applied. [Doc. 35 at 13]. Further, she does not allege in her Amended Complaint that specific Plan language is discriminatory but rather that Medcost's internal review policies ensured that nonquantitative treatment limitations were applied more stringently to mental health treatment. [See Doc. 28 at ¶¶ 65-66].

she seeks relief for a different injury under each ERISA provision—for an unlawful denial of benefits under § 1132(a)(1)(B) and for a breach of fiduciary duty under § 1132(a)(3). [Id. at 23].

Neither of these arguments demonstrates that § 1132(a)(1)(B) would not afford adequate relief. As to L.L.'s first argument, § 1132(a)(1)(B) expressly provides that plaintiffs may bring a civil action "to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Accordingly, to the extent L.L. seeks both a recovery of past-owed benefits and a clarification of future coverage, both remedies are available under § 1132(a)(1)(B). Similarly, L.L.'s argument that Medcost's alleged breach of fiduciary duty is a distinct injury fails. The harm that flowed from this alleged breach was the denial of benefits. Accordingly, the injury of breach of fiduciary duty is not distinct from the injury of a wrongful denial of benefits and can be adequately redressed through a recovery of benefits action. Because L.L.'s alleged injury can be adequately redressed through other ERISA provisions, the Court concludes that equitable relief pursuant to § 1132(a)(3) is not appropriate.

L.L. also argues that, even if her § 1132(a)(3) claim is duplicative because § 1132(a)(1)(B) adequately affords her relief, both claims should be allowed to go forward at the motion-to-dismiss stage. [Doc. 35 at 24]. L.L.

cites two out-of-circuit district court cases to support this proposition. [Id.]. However, courts in this circuit regularly dismiss duplicative § 1132(a)(3) claims at this stage of litigation. See, e.g., Koman v. Reliance Standard Life Ins. Co., 1:22-cv-595, 2022 WL 17607056 (M.D.N.C. December 13, 2022); Greenwell v, Grp. Health Plan for Emps. of Sensus USA, Inc., 505 F. Supp. 3d 594 (E.D.N.C. 2020); see also Savani v. Wash. Safety Mgmt. Sols., LLC, 474 F. App'x 310, 313 n.2 (4th Cir. 2012) ("The district court also properly dismissed count two on the grounds that a party may not request simultaneous relief under both ERISA, § 502(a)(1)(B) and § 502(a)(3)."). Accordingly, the Court will dismiss L.L.'s § 1132(a)(3) claim against Medcost.

### C. Proceeding Anonymously

Both L.L. and E.R. are identified only by pseudonym in the Complaint and the Amended Complaint. Rule 10 of the Federal Rules of Civil Procedure provides that complaints must include the names of all parties to an action. Fed. R. Civ. P. 10(a). However, "in exceptional circumstances, compelling concerns relating to personal privacy or confidentiality may warrant some degree of anonymity in judicial proceedings." Doe v. Public Citizen, 749 F.3d 246, 273 (4th Cir. 2014). Accordingly, the Plaintiffs are ordered to show cause as to why they should be allowed to proceed under pseudonyms.

15

## D. Substitution of Parties

This action was filed by L.L. individually and on behalf of her minor child, E.R. According to Medcost, E.R. has now reached the age of majority. [Doc. 36 at 2 n.1]. Accordingly, as E.R. can now presumably prosecute this action herself, the Plaintiffs are ordered to substitute E.R. as a party to this action or, alternatively, to show cause as to why E.R. cannot prosecute this action herself despite having reached the age of majority.

**IT IS, THEREFORE, ORDERED** that Medcost's Motion to Dismiss [Doc. 32] is **GRANTED IN PART AND DENIED IN PART.** The Motion is **GRANTED** as to the Plaintiff's second cause of action for equitable relief pursuant to 29 U.S.C. § 1132(a)(3) and **DENIED** as to the Plaintiff's first cause of action for recovery of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).

**IT IS FURTHER ORDERED** that, within fourteen days of the entry of this Order, the Plaintiffs shall show cause as to why they should be allowed to proceed anonymously.

**IT IS FURTHER ORDERED** that, within fourteen days of the entry of this Order, the Plaintiff shall file an appropriate motion to substitute E.R. as a party to this action or, alternatively, to show cause as to why E.R. cannot prosecute this action herself.

**IT IS SO ORDERED.**

Signed: January 20, 2023

*[Signature]*

Martin Reidinger
Chief United States District Judge